By the Court, Bronson, J.
The counsel of both parties •are agreed in waiving all minor points, for the purpose of *617 having the judgment of the court on the single question, whether associations formed under the general banking law are corporations, and so liable to taxation on their capital. That they are corporations, was adjudged by this court in the case of Thomas v. Dakin, (22 Wend. 9,) and the like judgment between other parties has since been affirmed in the court for- the correction of errors. (Warner v. Beers, 23 Wendell, 103.) • I am aware that one or two members of the court entertained some doubt upon this question, but they seem finally to have settled down upon' the conclusion, that although these banking companies may be corporations for all other purposes, yet they were not sp within the spirit and meaning of that clause of the constitution which requires a two-thirds vote for the creation of a body politic or corporate, Mr. Senator Yerplanck, who went further than any one else towards denying their corporate capacity, concluded,his opinion with the very cautious and guarded remark, that “ these associations under the banking law do not rightly fall within the true legal interpretation of the restraining clause of the constitution, and still less within its spirit and design.” This is far enough from saying that the free banks, as they are sometimes called, are not corporations to every intent and purpose save that which relates to the mode of creating them. .True, the constitution speaks of “ any body politic or corporate,” without limit or qualification; and although I have never been able to see how one class or description of corporations can be in, and another out of the provision, yet others have been able to make such a distinction; and it was,. I presume, upon this ground that the learned senator proceeded when he said, that these banks “ do not rightly fall within the true legal interpretation of the restraining clause of the constitution.” If he méant to affirm, without any qualification, that they were not corporations, it is but reasonable to suppose that he would have said so.
The lieutenant governor was equally guarded in his remarks. His conclusions were, 1. That associations formed under the banking act “are not corporations within the *618 spirit and true intent of the constitution;” and 2. “ But if corporations, still that the said act, even if within the letter, does not come within the spirit and intent of the ninth section of the seventh article of the constitution, and, therefore, the act was constitutionally passed.” Every one who knows the lieutenant governor, will readily admit, that if he had been prepared to say that these banks are not corporations, he would have said it, and that too in unequivocal terms, instead of placing his judgment upon another ground. No man better understands the force of language than he does, and it is but justice-to say, that he never seeks to avoid the full responsibility of his station.
There is no ground for supposing that the other members of the court intended to deny the corporate capacity of these associations. The resolution which was adopted was carefully worded, so as to exclude any such inference. It does not affirm that the free banks are not corporations, but only that they are not such “ within the spirit and meaning of the constitution.” If the object was to declare that these associations are not corporations at all, or for any purpose, why was any thing said about “ the spirit and meaning of the constitution?” It would be highly derogatory to the court to assume that this qualified language was used without meaning; and it would be still more objectionable to suppose that the proposition was submitted in this form for the purpose of catching votes, and then using the resolution as evidence that the court intended to affirm a principle to which few, if any, of the mem bers were prepared to give their assent.
A brief reference to some facts which do not appear in the case as ¿reported, will serve the double purpose of vindicating the court against misconstructions of the resolution, and showing that the members who voted for it were far enough from intending to affirm that thése banks are not corporations. On the day, or the day following the decision of the court for the correction of errors in the case of Warner v. Beers, a resolution was offered by Mr. Senator Yerplanck, affirming in direct and unqualified terms *619 that these associations, “are not bodies politic or corporate.” Whether the mover was himself prepared to vote for such a resolution, or whether it was only offered for the purpose of collecting the sense of the members on the abstract proposition which it contained, I am unable to say. But that such a resolution could not have been passed, is, I think, quite clear. It was laid on the table by common consent, and was not again taken up until thirteen, or fourteen days afterwards. When the consideration of the resolution was again resumed, it was immediately amended by unanimous consent—the mover himself, as I believe, not objecting to that course— by adding the very significant words, “ within the spirit and meaning of the constitution;” and in that form it was adopted. Now, whatever may be inferred from simply reading the resolution as it finally passed, the history which I have given of its original form and subsequent progress, renders it impossible to say, that any member who voted for the resolution intended to deny that these associations are corporate bodies. In confirmation of this remark, I may add'the further fact, which does not appear by the report, that the chancellor, who fully agreed with this court in the opinion that these banks were corporations, voted for the resolution as amended—indeed, I believe the amendment was proposed by him, and for the avowed purpose of meeting the views of those who agreed with him in the opinion that the free banks, though corporations, were not such within the intent and meaning of the constitution.
I have said thus much concerning the case of Warner v. Beers, because so much pains have been taken out of court to misstate the point decided, that some of the members of the bar seem to have fallen into the prevalent error of supposing that the court of last resort has held that our free banks are not corporate bodies; and the question whether they are corporations or something else, is so often presented, in one form or another, that it is high time the decision should be properly understood. What the court for the correction of errors may hereafter hold upon this ques *620 tion, I will not undertake to determine, though I think there is very little probability that any court will ever say, in explicit terms, that these banks are not corporations.
Although it is enough that this question has been decided, yet as there is an apparent disposition to agitate the point anew, and as I did no more in the case of Thomas v. Dakin than concur with my brethren in asserting the corporate capacity of the free banks, it may not be amiss to say a few words by way of assigning some of the reasons for my opinion. After the full discussion which the subject has received at the hands of my associates, it cannot be necessary for me to consider it much at large.
A corporation aggregate, is a collection of individuals united in one body, under such a grant of privileges as secures a succession of members without changing the identity of the body, and constitutes the members for the time being one artificial person, or legal being, capable of transacting some kind of business like a natural person. It does not occur to my mind that any thing else can be essential to the definition. Such a union as I have mentioned, can only be effected under a grant of privileges from the sovereign power of the state. A corporation is therefore said to be a legal being, or the mere creature of law. It is convenient, though not absolutely necessary, that this artificial person, like a natural one, should have a name by which it may he known and designated in the transaction of business. And when the doctrine was, that a corporation could only contract by its seal, a seal was said to be an indispensable requisite, • So, immortality was once thought to be an attribute of all corporations: but that now means no .more than a continued succession of members for such period, whether long or short, as may be allotted to this legal entity by its creator.
Now, a banking association formed under the law of 1838, not only may, but it must have a name; and a seal, though far from being essential to the existence of a corporation, is nevertheless an incident to the grant of corporate privileges, though not mentioned in the grant. This is *621 not only so at the common law, but by the statute also. (1 R. S. 599, § 1.) The right to sue and be sued is expressly conferred on these associations; and whether the suit is brought in the name by which the company transacts its other business, or with the addition of the name of its president, cannot be material. A corporation may have one name for one purpose, and another name for another purpose. And besides, the general banking law only provides, that actions may—not that they shall—be brought in the name of, or against the president; and the right to sue and be sued, like that of having a common seal, is not only a common law incident to the grant of corporate powers; but the legislature has expressly provided that this power shall vest in every corporation, although not specified in the act' under which it shall be incorporated. (1 R. S. 599, § 1, 2.) We have already held, more than once, that these associations may sue or be sued in the same corporate name by which their other business is transacted.
The .individuals composing these associations are united in one body, and the members lost in the corporate existence. It is not the individual members, but the legal being which acts and transacts, business. A continued succession of members, without changing the identity of the body, is also as completely secured to these institutions as it ever was to any other corporation. As to the period or duration of this continued succession, they surely have scope and verge enough. I observe from the articles on file, that one of these associations has agreed to live about five thousand years, and there is nothing in the general bank law to prevent the associates from writing eternity, instead of time, as the period of corporate existence. It is true that the association may come to an end somewhat short of the mark, and the one to which I allude has, I believe, already expired, but that was no fault of the charter.
What I had specially in view in adding any thing to what has. already been said upon this question, was to bring the matter to a single and very plain test. • Take one of *622 these • associations when formed pursuant to law, say the Bank of Commerce in the city of New-York, and compare it with its neighbor, the Bank of America, which has a special charter from the legislature; and then I have yet to learn what corporate capacity the one wants which the other has. No man can, I think, point out a substantial difference in the nature or essential attributes of the two institutions. The individual members are as completely merged in the legal body, and a succession of members is as effectually secured in the one case as in the other. In both cases, it is the body, by means of its officers and agents— and not the individual members—which acts and transacts business. If the one is not a corporation, the other is not a corporation.
We must not examine the charter of these associations in detached parcels, and say that neither this power nor that makes a corporation. It is quite easy when the parts of a timepiece have been separated, to place the finger upon each wheel in succession and say, this is not a clock. But let the parts be again combined and the machine be set in motion, and it will then require some hardihood to deny that it is a clock. We must look at these associations as they appear when formed and in action, and then they fall nothing short of that legal entity which has hitherto been called a corporation. Others may doubt this. I cannot.
The principal difference between a safety fund, and a free bank, consists in the fact that the latter has larger privileges than the former. But whether a corporation or not, does not depend upon the number or magnitude of its powers, nor the manner in which they were conferred. An association under our general laws for a village library, or to tan hides, possesses all the essential attributes of a corporation in as great perfection as the Bank of England, or the East India Company. Nor is it important in what mode, or by what name or particular agency, this artificial being transacts its business. It is enough that it has a capacity to act in some form as a legal being.'
*623 It may be true, as has been argued, that the legislature intended to make a. legal, being and give it all the essental attributes of a corporate body, and yet that it should not be a corporation. That, the legislature could not do. I do not refer to any written constitution. The' constitution of things— the order of nature—forbids it. Human powers are not equal to the task of changing a thing by merely changing its name.
Although there may be something in “ the spirit and meaning of the constitution” which will save this class of corporations from its influence, there is nothing in “ the spirit and meaning” of the tax laws which should exempt the relators from the same public burdens that fall on other monied corporations deriving an income from their capital.
We entertain no doubt that associations formed mider the general bank law of 1838, are corporations, and as such are liable to taxation on their capital.
Motion denied.